UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE

JERROD DOUD                                                                    CASE NO. 14-21834

DEBTOR

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO COMPEL RELEASE OF GAP PROCEEDS**

This matter requires deciding which party should receive funds paid by a Guaranteed Auto Protection (GAP) provider after Debtor Jerrod Doud totaled his car. Debtor and the Chapter 13 Trustee contend that the GAP proceeds should flow to the bankruptcy estate. Creditor Credit Acceptance Corporation, which received the GAP funds directly from the GAP provider, argues that it is entitled to keep those funds.

**JURISDICTION AND VENUE**

This Court has jurisdiction over this matter and venue is proper. 28 U.S.C. §§ 1334, 1409. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (E).

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 9, 2014, Debtor signed a Retail Installment Contract to purchase a used 2014 Nissan Versa from McCluskey Chevrolet, Inc. He provided a $1,000 down payment and financed the remainder of the purchase price. Included within the total amount financed was a $599.00 charge payable to Western Diversified Services, Inc. for "Optional Gap Protection." [Proof of Claim 1-1 at 5.] Debtor signed the Retail Installment Contract on the line reflecting that he was acquiring GAP protection under a paragraph that stated:

> GAP PROTECTION: Optional Guaranteed Auto Protection (GAP) is not required
> to obtain credit. GAP protection will not be financed under this Contract unless
> You sign for it below and agree to pay the additional cost shown below and on
> Line 5G of the ITEMIZATION OF AMOUNT FINANCED. You may obtain

> optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us.   The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail.   If You want GAP protection, sign below.

[*Id*.]   The Retail Installment Agreement also contained a term stating that McCluskey Chevrolet "has assigned this contract to Credit Acceptance Corporation," Creditor herein.   [*Id*.]

The Retail Installment Contract also has "Additional Terms and Conditions" pages.   The additional terms included, *inter alia*, a paragraph labeled "Security Interest and Assignment of Proceeds."   [Proof of Claim 1-1 at 6-8.]   That paragraph states:

> You give Us a security interest in the Vehicle. This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract.   It also secures Your other agreements in this Contract.   You agree to have the certificate of title show our security interest (lien) in the Vehicle[.] Until Your obligations under this Contract are satisfied, You assign to Us all Your right, title and interest in and to: 1) all parts or goods put on the Vehicle; 2) all money or goods received (proceeds) for the Vehicle (including all parts or goods put on the Vehicle); 3) all insurance, service, or other contracts We finance for You; and 4) all proceeds from insurance, service, or other contracts We finance for You. This includes any refunds of premiums.

[*Id*. at 6.]

On the same day he executed the Retail Installment Contract, Debtor also signed a "GAP Addendum."   The GAP Addendum identified Debtor as the "Customer/Borrower;" identifies Creditor as the "Financial Institution/Lender," and specifies both the amount paid as the premium for GAP protection ($599.00) and the total amount financed ($15,860.58, which includes the amount paid as the premium for GAP protection).   The GAP Addendum itself, however, does not specify which person or entity would receive a payment from the GAP protection provider in the event any payment became due.

On December 19, 2014, Debtor filed a chapter 13 bankruptcy petition.   Debtor listed his 2014 Nissan Versa on Schedule B, indicating that Creditor's lien on the vehicle was not timely

2

perfected. Debtor's chapter 13 plan filed with his petition estimated Creditor's claim at $15,371 with a secured value of $0. Creditor filed Proof of Claim 1-1 on December 23, 2014, listing a fully-secured claim of $15,190.68. Creditor then objected to Debtor's chapter 13 plan, claiming that the plan failed to satisfy 11 U.S.C. § 1325 as it proposed to pay less than the full amount of Creditor's secured claim. Subsequently, pursuant to an Agreed Order between the Chapter 13 Trustee, Creditor, and Debtor, all parties agreed that Creditor's lien on the vehicle was avoided in accordance with §§ 544 and 547, that the collateral was preserved for the benefit of the estate pursuant to § 551, and that Creditor's claim would be treated as a general unsecured claim. [ECF No. 30.] Debtor's plan then was confirmed.

About two years later, Debtor totaled his vehicle. On April 27, 2017, the Court entered an Agreed Order as between Debtor and the Chapter 13 Trustee directing the distribution of insurance proceeds from State Farm Insurance Company: "Insurance proceeds in the amount of $5,487.00, after application of the deductible, are available to the debtor for the purchase of a replacement vehicle. The trustee has no opposition to the debtor using the insurance proceeds to acquire a replacement vehicle." [ECF No. 42.] However, the State Farm insurance proceeds did not cover the full amount of Debtor's remaining indebtedness to Creditor on its unsecured claim based on the Retail Installment Contract. As a result, Debtor's GAP protection was triggered. Because Debtor purchased GAP protection, "Debtor's GAP insurance … made a payment to the Creditor in the amount of $5,830.04." [ECF No. 44 at 2.]

Debtor challenged Creditor's receipt of the payment, and Creditor refused to turn over the funds. Accordingly, Debtor filed a Motion to Compel Release of Funds [ECF No. 44 (the "Motion")], arguing that "Creditor is being paid as an unsecured creditor, making the GAP

3

payment and distributions from the Trustee [as an unsecured creditor under debtor's chapter 13 plan] duplicative," and asking that Creditor be compelled to turn over the $5,830.04 to the Chapter 13 Trustee. [*Id*. at 3.] Creditor filed an Objection. [ECF No. 46.] The Court held a hearing and has reviewed these filings along with the Proof of Claim and additional submissions by Creditor, Debtor, and the Chapter 13 Trustee. [ECF Nos. 47, 51-55, 58.] The Court notes that none of the parties filed in the record the GAP contract issued by the provider of GAP protection (Western Diversified Services, Inc.) referenced in the Retail Installment Agreement.

## ANALYSIS

The Eastern District of Kentucky explained "gap insurance" as follows:

> In any vehicle sale, dealers will generally offer to sell the buyer ancillary products and services, including gap insurance. Gap insurance protects the car buyer from certain risks in the event of loss. In the event that a car is "totaled," the buyer's primary insurance carrier will generally only pay the market value of the vehicle at the time of loss, which may be less than what the buyer owes under the Credit Transaction. Gap insurance covers the difference between the market value and the amount owed under the Credit Transaction. Many gap insurance products are available in the Kentucky vehicle market, and vehicle buyers decide whether to purchase gap insurance. If the buyer decides to purchase the insurance product, he or she will usually purchase whichever product is suggested by the dealer at the point of sale. If the buyer purchases gap insurance, the purchase price is included in the total amount financed by the dealer, and in turn, sold to the entity purchasing the Credit Transaction.

*Midwest Agency Servs. v. JP Morgan Chase Bank, N.A.*, Civil Action No. 2:09-165-DCR, 2010 U.S. Dist. LEXIS 22457, at *3-4 (E.D. Ky. March 11, 2010) (record citations omitted). *See also In re Hargrove*, 400 B.R. 616, 620 (Bankr. M.D. Tenn. 2008) ("Gap insurance protects debtors by covering the amount of damage that exceeds the value of the vehicle up to the outstanding balance of the secured loan. *In re Munzberg*, 388 B.R. 529, 543 (Bankr. D. Vt. 2008) (citation omitted). Gap insurance 'shifts a risk from the insured to an insurance company that is paid a premium to accept that risk.' *In re Hayes*, 376 B.R. [655,] 672 [(Banrk. M.D. Tenn. 2007)].").

The GAP Addendum signed by Debtor and filed in the record [ECF No. 47] does not identify a payee. This has created confusion and led to arguments concerning whether the GAP proceeds are "property of the estate" under 11 U.S.C. § 541(a) based on case law regarding a bankruptcy estate's entitlement to insurance proceeds, including *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993). The Chapter 13 Trustee also argued that, because Creditor's lien was avoided under § 544 pursuant to an Agreed Order, the Chapter 13 Trustee steps into Creditor's shoes such that "any rights in the vehicle or any proceeds thereof held by [Creditor] as of the date the bankruptcy petition was filed are now held by the Trustee." [ECF No. 52 at 5.]

By focusing their efforts in these directions, Debtor, Creditor, and the Chapter 13 Trustee did not sufficiently consider the actual language of the pertinent documents. Under Ohio law, "the cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. 'The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" *Foster Wheeler Envirespose, Inc., v. Franklin County Convention Facilities Authority*, 678 N.E.2d 519, 526 (Ohio 1997) (citations omitted).[1] In fact, there are two documents in the record, notwithstanding the absence of the GAP contract issued by Western Diversified Services, Inc., that contain specific terms which dictate the resolution of this Motion.

---

[1] The Terms and Conditions state: "The terms of this Contract are governed by law of the state of the Seller's address shown on page 1 of this Contract, except to the extent preempted by applicable federal law." [Proof of Claim 1-1 at 7.] McCluskey Chevrolet's address on the Retail Installment Contract is in Cincinnati, Ohio. Accordingly, Ohio law applies, and no party has argued that this choice of law clause in the Retail Installment Contract should be ignored.

5

First, Creditor submitted a supplemental document that defines terms in the GAP Addendum and explains the manner in which GAP benefits are calculated and the procedure by which GAP benefits may be requested. Neither Debtor nor the Chapter 13 Trustee objected to the authenticity or applicability of this document [ECF No. 55], which was supplied after Creditor filed the GAP Addendum in the record. The document setting forth additional terms states: "If You include proof that the FINANCING AGREEMENT has been satisfied, the GAP BENEFIT will be accorded to You. If this proof is not provided, the assigned Financial Institution/Lender will be named payee of the GAP BENEFIT." [*Id*. at 3.][2]

Debtor has not contended that he satisfied the debt he owed to Creditor under the Retail Installment Contract, nor that he provided proof of having done so when requesting payment of the GAP benefit. Accordingly, the terms of the GAP Addendum provide that, under the circumstances, Creditor is entitled to receive the GAP benefit as the "named payee." As a result, under the terms of the GAP Addendum and the facts presented, Debtor had no entitlement to the GAP benefits, and the $5,830.04 paid to Creditor was never part of Debtor's bankruptcy estate under 11 U.S.C. § 541(a).

Further, the Chapter 13 Trustee's avoidance of Creditor's security interest in the vehicle does not grant Trustee any rights under the GAP Addendum. *See*, *e.g.*, *In re Closson*, 100 B.R. 345, 347 (Bankr. S.D. Ohio 1989) (denying a trustee's motion to recover postpetition payments to a creditor for a vehicle when the trustee avoided the creditor's lien on the vehicle, stating

---

[2] The supplemental document defines the term "Financing Agreement" as follows: "FINANCING AGREEMENT means the contract that represents the written understanding between the Dealer/Creditor and You for the purchase or lease of the VEHICLE and which sets forth the terms, conditions, inception date, and expiration date of the contract." [ECF No. 55 at 3.] Applying this definition, the Retail Installment Contract is the Financing Agreement here.

6

"Trustee's argument ignores 11 U.S.C. § 550, which limits the extent of recovery from the transferee of an avoided transfer (in this case FMCC) to the value of the property transferred -- the Automobile. This subsection of the Code directly refutes the broad interpretation of 11 U.S.C. § 551 asserted by the Trustee."). Stated differently, the GAP benefit funds are not proceeds of the vehicle. They constitute a payment that became due and owing under the terms of a contract. The avoidance of Creditor's lien has no impact on its entitlement to this separate contract right.

This is further borne out by another document in the record—the Terms and Conditions of the Retail Installment Contract—which also speaks to Creditor's entitlement to the GAP proceeds. As Trustee recognized:

> The Retail Installment Contract provides Debtor gave Credit Acceptance a security interest in the Versa. The security interest secured the payment of all that Debtor owed under the terms of the Retail Installment Contract. In addition, **Debtor assigned all his rights, title, and interest in and to all insurance, service, or other contracts that Credit Acceptance financed for Debtor. Debtor also assigned to Credit Acceptance all proceeds from insurance, service, or other contracts that Credit Acceptance financed.**

[*Id*. at 2 (emphasis supplied).] While Trustee avoided Creditor's lien on the vehicle, that action did not affect Debtor's separate assignment to Creditor of "all proceeds from insurance, service, or other contracts We finance for You." [Proof of Claim 1-1 at 6]

Pre-petition, and by way of the Additional Terms and Conditions for the Retail Installment Contract, Debtor expressly and without condition agreed to assign to Creditor all of his right, title and interest in and to the proceeds from any insurance or other contract for which Creditor provided financing. There is no dispute that Creditor supplied Debtor with the $599.00 used to purchase GAP protection via the GAP Addendum. Therefore, as a result of the express assignment by Debtor contained in the Retail Installment Contract, Creditor came to own

whatever interest Debtor may have had in the proceeds of the GAP Addendum before Debtor filed his petition.  This further establishes that the GAP benefits never became property of Debtor's bankruptcy estate.  And, as with Creditor's rights under the GAP Addendum, Creditor's rights under the Retail Installment Contract were not transferred to the Chapter 13 Trustee upon Trustee's avoidance of Creditor's security interest in the vehicle.

## CONCLUSION

For the foregoing reasons, and based on the materials in the record, it is ORDERED that the Motion is DENIED.

8

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Thursday, June 21, 2018
(tnw)